FILED

February 17, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 10:43 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT COOKEVILLE

| | |
|---|---|
| Linda Green,<br>　　　　Employee,<br>v.<br>Rogers Group,<br>　　　　Employer,<br>And<br>Liberty Mutual Insurance Co.,<br>　　　　Carrier. | Docket No.: 2016-04-0085<br><br>State File No.: 99072-2015<br><br>Judge Robert Durham |

## EXPEDITED HEARING ORDER GRANTING BENEFITS

This cause came before the undersigned Workers' Compensation Judge upon the Board of Appeals' vacation and remand of an Order for Benefits originally issued on November 3, 2016. The first issue is whether Rogers Group has provided sufficient evidence to assert an intoxication defense to Ms. Green's claim pursuant to Tennessee Code Annotated section 50-6-110(c)(1) (2015), and if so, whether Ms. Green is likely to prove by clear and convincing evidence that her intoxication was not the proximate cause of her injury on December 11, 2015. Ms. Green also seeks reimbursement for past medical expenses, additional medical care, and temporary total disability benefits. The Court holds Ms. Green is likely to prevail at a hearing on the merits with regard to the compensability of her claim; however, she has not established the likelihood of prevailing at such a hearing with regard to unauthorized medical expenses beyond her initial emergent care or the extent of her temporary disability following her injury.

### History of Claim

On December 11, 2015, Ms. Green was working as a dispatcher for Rogers Group, a rock and gravel provider, when she fell approximately eight feet from a catwalk while at a ticket printer box. (Ex. 1.) Ms. Green asserted in her affidavit that she fell through a gap in the platform "that should have had a protection barrier." (Ex. 4.) A co-worker, Jackie Dale Gregory, corroborated this testimony by affidavit. (Ex. 12.) Ms. Green suffered serious injuries and was transported by ambulance to Skyline Medical Center,

1

where she stayed until December 13.[1] (Ex. 8 at 2.)

Ms. Green and her husband, Larry Green, testified that immediately following her discharge from Skyline on the 13th, they received a phone call from Skyline urging her to return to the hospital as quickly as possible due to tests that revealed a serious oxygen deficiency. Ms. Green immediately returned by ambulance to Skyline complaining of "feeling terrible" and suffering from respiratory insufficiency. She was readmitted to the hospital, where she stayed until December 17. According to the admission report, Ms. Green suffered "multiple right-sided rib fractures and transverse process fractures of her lumbar spine." She denied alcohol use or drug abuse. Ms. Green underwent a CT scan of her chest that revealed a right hydropneumothorax that was not present on the study taken on December 11. Dr. Benjamin Tourkow also diagnosed Ms. Green with a pulmonary embolism in her right lung and a partial lung collapse. (Ex. 8 at 1, 2, 7, 24.)

While Ms. Green was at Skyline on December 11, Quest Diagnostics attempted to obtain a urine sample for drug testing but had to cancel the initial attempt because she was in too much pain to give it. (Ex. 6 at 5.) Mr. Green testified that when Quest arrived, Ms. Green was incoherent due to her pain and the drugs she received, but she did not refuse the drug screen; rather the emergency room staff advised Quest to return later when the sample could be obtained from a bedpan. Ms. Green provided a urine sample later that evening that Quest used to perform a drug screen. *Id.* at 11.

Dr. Greg Elam, Medical Review Officer for National Toxicology Specialists, testified that the first page of the drug screen report provided by Quest only denotes the cut-off levels for the initial test (twenty nanograms) and the MS confirmation test (five nanograms) that were requested by Rogers Group and did not reflect the actual drug levels found in Ms. Green's sample. He explained that the second page of the report documented the actual level of a specific marijuana metabolite found in Ms. Green's urine through the MS confirmation test, and it recorded the level at sixteen nanograms.

Dr. Elam further testified that Quest originally tested Ms. Green's sample for drugs pursuant to the standards set by the Tennessee Drug-Free Workplace Act (TDFW). The initial test did not reach the level required for a positive drug screen under the Act, and so Quest did not conduct a confirmation test. However, he realized that the test was not performed in accordance with the more stringent standards requested by Rogers Group, and therefore ordered the sample be retested. Upon retesting, the confirmation test revealed sixteen nanograms of a specific marijuana metabolite in Ms. Green's system. Dr. Elam testified he did not know what the "initial test" results on the retest revealed, since Quest did not provide that data to him. *Id.* He further admitted that Ms. Green "passed" the first test pursuant to TDFW standards regarding marijuana.

---

[1] Neither party produced the emergency room or hospital records from Ms. Green's visit to Skyline on December 11. The information is gleaned from Ms. Green's readmission to Skyline on December 14.

Nevertheless, Dr. Elam certified that Ms. Green tested positive for marijuana. (Ex. 6 at 10.) Based on these test results, Rogers Group denied Ms. Green's workers' compensation claim.

As recommended by Dr. Mezghebe at Skyline, Ms. Green sought additional treatment with her personal care physician, Richard Rutherford, at Carthage Family Practice (CFP), which monitored her Coumadin levels.[2] On January 18, 2016, Physician's Assistant Peter Alfano recorded Ms. Green was there for "follow-up/recent evaluation of right rib fractures from a fall on 12/11/15. Resulted in secondary pneumothorax and pulmonary embolus." (Ex. 9 at 15.)

Ms. Green continued treatment with CFP, noting improvement on February 18, 2016, and stating she was "ready to return to work as a truck dispatcher." *Id.* at 16. Ms. Green underwent another urine drug screen on February 23, 2016, as a condition to returning to work for Rogers Group. (Ex. 6 at 17.) The confirmation test for marijuana revealed fifteen nanograms of marijuana metabolites. According to Dr. Calvin Channell, another Medical Review Officer, Ms. Green again tested positive for marijuana. *Id.* Dr. Elam also confirmed this result. *Id.* at 18. Rogers Group then terminated Ms. Green's employment.

Ms. Green continued to treat at CFP for pain in her low back and right ribs until April 24, 2016. She testified that in the spring of 2016, she began working for another construction company at a wage less than she made at Rogers Group, but she received a raise in October, so that she now makes more.

Ms. Green averred in her affidavit that, "she had witnesses that can testify to her state of mind" on December 11; however, she did not identify them or produce any testimony from them. (Ex. 4.) She also did not testify as to her sobriety at the time of the accident, although she contended that the last time she "was around or did marijuana" prior to the accident was November 25, 2015. *Id.* She also offered a note from Acute Surgical Care Specialists stating she was under doctor's care from December 13 through December 29, 2015, and a note from P.A. Alfano stating she was under his care beginning on December 21, 2015, and was able to return to work on February 22, 2016. (Ex. 13, 14.)

Mr. Thomas Oczkowicz, Risk Management Director for Rogers Group, testified by affidavit that Rogers Group was an active member of the TDFW on December 11, 2015, and attached a copy of its application and memorandum of acceptance into the TDFW program to his affidavit. (Ex. 7.)

---

[2] While Ms. Green primarily saw Physician's Assistant, Peter Alfano, at CFP, Dr. Rutherford reviewed and approved the records as noted by his electronic signature.

3

## Findings of Fact and Conclusions of Law

As in all workers' compensation actions, Ms. Green, as the claimant, has the burden of proof on all essential elements of her claim. *Scott v. Integrity Staffing Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). However, since this is an expedited hearing, she only has the burden to come forward with sufficient evidence from which the trial court can determine she is likely to prevail at a hearing on the merits in order to meet her burden. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

Rogers Group does not contest the fact that Ms. Green suffered an injury at work on December 11, 2015, but instead asserts the affirmative defense that illegal drug usage was the proximate cause of her injury, thus rendering it non-compensable pursuant to Tennessee Code Annotated section 50-6-110(a)(3) (2016). If Rogers Group proves it is likely to establish at trial that "it has implemented a drug-free workplace" pursuant to statutory and regulatory guidelines, and Ms. Green has a "positive confirmation of a drug as defined in § 50-9-103," there is a statutory presumption that the drug was the "proximate cause of injury." Tenn. Code Ann. § 50-6-110(c)(1) (2016). The burden then shifts to Ms. Green to show she is likely to prevail at trial in rebutting the presumption by "clear and convincing evidence" that the drug use was not the proximate cause of her injury. *Id.*

Rogers Group first asserts that Ms. Green refused to provide a urine sample on December 11, and her refusal created a presumption that intoxication was the proximate cause of her injury pursuant to Tennessee Code Annotated section 50-6-110(c)(3) (2016). However, upon review of the record and the undisputed testimony of Mr. and Ms. Green, the Court finds that she did not refuse a urine sample upon Quest's first request. Rather, she was incapable of giving one at the time, and medical personnel requested Quest come back to obtain the sample from a bedpan, which they did later that evening. Therefore, the Court holds Rogers' Group assertion that Ms. Green refused to provide a urine sample to be without merit, and the Court must consider the actual test results obtained by Quest.

It is undisputed that Rogers Group was a member in good standing with the Tennessee Drug-Free Workplace program at the time of Ms. Green's injury, and that Dr. Elam, as the Medical Review Officer, noted the post-accident drug screen was "positive" for marijuana. However, the drug test must have been performed in compliance with the law in order to create the presumption that intoxication was the proximate cause of Ms. Green's injury. Tennessee Code Annotated section 50-9-104(a) (2016) states that "if a covered employer fails to maintain a drug-free workplace program in accordance with the *standards and procedures established in this section and in applicable rules*, the covered employer shall not be eligible for . . . [a] shift in the burden of proof pursuant to §50-6-

110(c)." (Emphasis added.)

Tennessee Code Annotated section 50-9-111(a)(4) (2016) requires the creation of a rule regarding the "minimum cut-off detection levels for alcohol, each drug or metabolites of the drug for the purpose of determining a positive test result." Rule 0800-02-12.03(17) (2016) of the Tennessee Compilation of Rules and Regulations sets out the "prohibited levels" for various drugs necessary to create a "presumptively positive" drug test. For marijuana, the "cut-off level" for an initially screened specimen is fifty nanograms, and for a confirmation specimen the "cut-off level" is fifteen nanograms.[3] Furthermore, Rule 0800-02-12.07(6) (2016) provides that "[a]ll testing for drugs and alcohol shall be in accordance with the procedures compiled at 49 C.F.R., Part 40." 49 C.F.R., Part 40 section 40.87, subsections (b) and (c) state as follows:

(b) On an initial drug test, you must report a result below the cutoff concentration as negative. If the result is at or above the cutoff concentration, you must conduct a confirmation test.

(c) On a confirmation test, you must report a result below the cutoff concentration as negative a result at or above the cutoff concentration as confirmed positive.

According to the undisputed testimony of Dr. Elam, the first initial drug test conducted by Quest was below fifty nanograms for marijuana, and thus under the "cut-off level" as defined by Rule 0800-02-12.03(17). Therefore, pursuant to 49 C.F.R. section 40.87(b), and by reference, Rule 0800-02-12.07(6), this result should have been reported as a "negative" drug test and no confirmation test was required. Indeed, Dr. Elam admitted as much when he testified that, pursuant to the Tennessee Drug-Free Workplace standards, Ms. Green "passed" the first drug test with regard to marijuana.

Of course, Rogers Group argues that even though a confirmation test was not required, one was conducted anyway because the first test was not performed according to the standards set by Rogers Group. The confirmation test, which was more specific than the initial test, exceeded the standard set by the TDFW for a positive result on a confirmation test; thus, the test was positive and sufficient to create the presumption of intoxication.

The Court knows of no reason why Rogers Group may not require a drug test with more stringent standards than the TDFW and use the test results in any manner allowed by law; however, the issue before the Court is whether the application of the test comports with the requirements of the TDFW. Thus, the question is not whether Ms.

---

[3] This differs from Rogers Group's internal policy of setting the cut-off levels for the initial test at twenty nanograms and the MS confirmation test at five nanograms.

Green had marijuana in her system, which is undisputed. The question is whether the marijuana in her system was sufficient to establish a "positive" drug test in accordance with the rules and procedures set out under the TDFW, and thus create the presumption of intoxication as the proximate cause of Ms. Green's injuries. The Court finds the answer in this case to be "no" because, under 49 C.F.R. section 40.87(b) and, by extension, Rule 0800-02-12.07, Quest was required to report Ms. Green's initial drug test as negative.

Because the Court finds the post-accident drug test is insufficient to establish a positive result in accordance with the TDFW, Rogers Group appears unlikely to establish a presumption of intoxication as a proximate cause. Other than its attempt to rely on the presumption, Rogers Group submitted no evidence that intoxication was the actual proximate cause of Ms. Green's accident on December 11, 2015. Therefore, Ms. Green is likely to prevail at trial and is entitled to workers' compensation benefits for any injuries she sustained from the accident. *See* Tenn. Code Ann. § 50-6-110(a)(3) (2016).

While the Court holds Ms. Green is likely to establish she sustained a compensable injury on December 11, 2015, the reasonableness and necessity of the medical expenses she has sustained thus far remains in question. Whether an employee is justified in seeking payment for unauthorized medical expenses from an employer depends upon the circumstances of each case. *Buchanan v. Mission Ins. Co.,* 713 S.W.2d 654, 656 (Tenn. 1986). In this instance, the medical records provided establish Ms. Green suffered multiple rib and lumbar vertebrae fractures as due to her fall on December 11. While the parties did not provide medical records from Ms. Green's initial emergency room visit, documentation from Quest Diagnostics state the first drug screen had to be cancelled because her pain was too great to give a urine sample. Furthermore, both Mr. and Ms. Green testified that she was suffering from intense pain, to the point that Mr. Green testified Ms. Green was "incoherent" as a result. Therefore, the Court finds Ms. Green's initial trip to Skyline Hospital and the treatment she received until her initial discharge on December 13, was reasonable under the circumstances, and Rogers Group is required to pay the reasonable and necessary costs associated with this care.

However, with regard to Ms. Green's second trip to Skyline and her readmission to the hospital on December 13, the Court finds she provided insufficient evidence to establish her entitlement to those expenses at this time. While she and her husband testified the hospital called her and insisted she return as soon as possible because of her oxygen levels, no doctor has provided an explicit opinion to this effect, nor has any physician addressed the reasonableness and necessity of a four-day stay in the hospital as a result of her December 11 work-related injury. The same is true for the subsequent care provided by Carthage Family Practice. Therefore, the Court holds Ms. Green has simply not provided sufficient evidence to establish her likelihood to succeed at a hearing on the merits regarding payment for these expenses at this time.

6

In order to receive temporary total disability benefits, Ms. Green must prove (1) total disability from working as the result of a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *Shepherd v. Haren Const. Co., Inc., et al.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 15, at *13 (Mar. 30, 2016). Ms. Green failed to provide sufficient evidence to establish the duration of any temporary total disability she sustained because of her injury, given that no doctor has provided an opinion in this regard. Again, while she provided notes from providers documenting the time she was under their respective care, there is nothing from any doctor to causally link her care to her work injury or to indicate that she could not work during those timeframes. Therefore, the Court cannot award her temporary disability benefits at this time.

Nevertheless, Ms. Green is entitled to a panel of physicians from which she may choose an authorized treating physician for any additional care she may require for her December 11 work-related injury. *See* Tenn. Code Ann. § 50-6-204(a)(1)(A) (2016). The selected physician may then render and opinon on the reasonableness and necessity of Ms. Green's past medical care as well as the extent of her temporary disability following her injury.

IT IS, THEREFORE, ORDERED:

1. Rogers Group shall pay the reasonable and necessary medical expenses for Ms. Green's medical care from December 11 through December 13, 2015, incurred as a result of her work-related fall.

2. Rogers Group shall provide a panel of physicians from which Ms. Green may choose an authorized physician to provide medical treatment for her work-related injury of December 11, 2015.

3. Issues regarding payment of medical expenses incurred subsequent to Ms. Green's initial discharge from Skyline Hospital on December 13, 2015, and temporary disability benefits are deferred until an authorized physician addresses them.

4. This matter is set for a Scheduling Hearing on April 10, 2017, at 1:30 p.m. C.S.T.

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For

questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471.

**ENTERED THIS THE 17th DAY OF FEBRUARY, 2017.**

_____
**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

## Scheduling Hearing:

A Scheduling Hearing has been set with Judge Robert Durham, Court of Workers' Compensation Claims. You must call 615-253-0010 or toll-free at 855-689-9049 to participate in the hearing.

Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

## APPENDIX

Exhibits:

1. First Report of Injury
2. Laboratory Report from Quest Diagnostics
3. Report from National Toxicology Specialists
4. Affidavit of Linda Green
5. Wage Statement
6. Notice of Filing Medical Records
7. Affidavit of Thomas Oczkowicz
8. Medical records of Skyline Medical Center
9. Medical records of Carthage Family Practice
10. Medical records and tests unsigned by doctors (for I.D.)
11. Medical Bills (for I.D.)
12. Drug Screen form dated March 4, 2016 (for I.D.)
13. Transcript of various texts (for I.D.)
14. Affidavit of Jackie Dale Gregory
15. Affidavit of Linda Green

16. Note from Peter Alfano, P.A.-C
17. Note from Acute Surgical Care Specialists
18. Medical bills from Skyline Medical Center and Carthage Family Practice (I.D. only)
19. C.V. of Dr. Greg Elam

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Motion to Dismiss
4. Show Cause Order
5. Order on Show Cause Hearing
6. Request for Expedited Hearing
7. Employer's Response to REH
8. Employer's Motion for Extension of Time
9. Employee's Position Statement
10. Docketing Notice
11. Employer's Objection to Admissibility of Records
12. Ms. Green's Position Statement
13. Rogers Group Position Statement
14. Rogers Group Response to Employee's Request for Expedited Hearing
15. Ms. Green's Supplemental and Amended Position Statements

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Benefits was sent to the following recipients by the following methods of service on this the 17 day of February, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Linda Green | X | | X | P.O. Box 32, Riddleton, TN 37151 cookiejoeg@gmail.com |
| Heather Douglas | | | X | hdouglas@manierherod.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**

9

WC.CourtClerk@tn.gov